226 P.2d 147

McCAMPBELL v. BENEVOLENT & PROTECTIVE ORDER OF ELKS, No. 536, et al.

No. 5404.

Supreme Court of Arizona.

Dec. 18, 1950.

Guy Axline, of Holbrook, Shute & Elsing, of Phoenix, for petitioner.

H. S. McCluskey, Phoenix, for respondent Industrial Commission. Robert E. Yount and Donald J. Morgan, Phoenix, of counsel.

PHELPS, Justice.

For a number of years William G. Kelly, hereinafter referred to as deceased, was employed by the Elks' Lodge at Winslow, Arizona, as custodian of the building and manager of the lodge. On August 22, 1949, he was injured by a fall on his way to work. The fall occurred on the premises of the lodge as deceased walked along the concrete pavement leading from the street to the entrance of the Elks' Building. At the time of the accident deceased was 76 years of age and was at times required to use crutches, due to a former injury to his knee. On the morning in question he was, and had been for several days, using crutches. He had been conveyed by auto from his home to the lodge by the janitress, Annie Hayes, who was also an employee of the lodge. It was her custom to drive by the home of deceased and take him to the lodge in her car. Upon arriving at the front of the Elks' Building they both alighted from the car. The janitress walked in front of the deceased from the car up the concrete pavement to the entrance of the building and had put the key in the lock preparatory to unlocking the door when she looked around and saw deceased lying on his back on the pavement with his feet close to the bottom of the steps leading up to the front of the building. His head pointed directly toward the street and his feet were close to the bottom of the steps leading up to the door. The steps are concrete and consist of five in number extending across the entire front entrance. They lead up to the front door from the front and from each end of the steps, that is from three sides. The janitress did not see the deceased fall. There is nothing in the record to the effect that she heard him fall or what caused her to look around when she saw him lying on his back on the concrete walk. Neither is there anything in the record from the deceased or from any-

other source as to just what caused him to fall. He told his daughter, Mrs. Schaar, he had fallen on the steps of the Elks' club. The janitress assisted deceased in getting up and accompanied him into the building. After sitting in a chair for a few minutes he began to do his work as usual and stated that he didn't think he was hurt much. Later in the day, however, he stated that he got a pretty hard spill and complained of not feeling too well. He continued to work during that day. He also worked during the three days following, that is, on August 23, 24 and 25 but complained each day of not feeling well. He also complained of some soreness in his body. On the 26th of August Mr. Kleindienst, secretary of the lodge, was notified that he was unable to come to work. On the latter date he was dizzy, mentally confused, and had considerable difficulty in enunciating his words. His tongue seemed thick.

The members of his family observed on the second day after the fall that there was a lack of coordination in his movements when he attempted to eat or to pick up anything.

Dr. Wright was called on the morning of August 26th and deceased was sent to the hospital. He never again went back to work but did not die until February 12, 1950. No report of the accident or application for compensation was made to the commission until October 5, 1949, when Mr. Kleindienst, secretary of the lodge, reported the injury. Thereafter on October 17th the deceased filed his claim for compensation. On the same date Dr. Wright wrote a letter to the commission concerning the applicant's condition and on the following day made a report to the commission concerning the accident and injury.

There is no dispute in the evidence to the effect that the cause of the death of the deceased was cerebral hemorrhage, to which the doctors refer as a "cerebral vascular accident." There is no dispute about deceased having fallen on the concrete walk leading from the sidewalk to the entrance of the Elks' Lodge building on the date above mentioned; and that the fall occurred on the property of the Elks' Lodge as he was stepping up on or about to step up on the steps leading to the front door of the building. There is no dispute in the evidence that deceased complained of not feeling too good or of not feeling too well during the day the fall occurred and on each of the following three days during which period he was performing his work at the club. There is no dispute that his family noticed a faulty coordination in his movements from the second day after his accident until August 26th when he "blacked out," or that on the latter date he became mentally confused and had great difficulty in his speech. There is no dispute that deceased was unable to do any kind of work after August 26th. There was a conflict in the medi-

cal testimony, however, as to whether the fall produced the cerebral hemorrhage or whether a cerebral hemorrhage caused deceased to fall.

The commission on March 28, 1950, after a hearing at which testimony was received, made its finding and award denying compensation upon the ground that it found deceased did not sustain an injury by accident arising out of and in the course of his employment. A rehearing was granted and after receiving further evidence the commission on July 12, 1950, affirmed its original findings and award. The cause comes to us on certiorari based upon the following assignment of error: 1. The commission erred in its finding and award of March 28, 1950 and July 12, 1950, for the reason that the evidence establishes that the injury was compensable; and a finding to the contrary is not supported by the evidence and is not in accordance with the law.

Counsel for the commission agree there was an accident and that the accident occurred on the premises of the lodge and apparently agree that it occurred in the course of his employment but deny that the injury arose out of his employment. ▮ It is the unquestioned law of this state that three things must concur to entitle an injured person to compensation under the provisions of our Workmen's Compensation Act. A.C.A.1939, § 56-901 et seq. They are as follows: (a) the injury must be by an accident; (b) it must occur during the course of his employment; and (c) it must arise out of his employment. Goodyear Aircraft Corp. v. Gilbert, 65 Ariz. 379, 181 P.2d 624.

We will omit, for the present, a discussion of any claimed conflicts in the evidence and proceed to a determination of whether the conclusion of the commission that the injury sustained by deceased "did not arise out of the employment of deceased," is reasonably supported by the evidence.

In the case of Pacific Fruit Express Co. v. Industrial Commission, 32 Ariz. 299, 258 P. 253, 254, 55 A.L.R. 975, we quoted with approval the following language from Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A.L.R. 812:

" 'The words "arising out of and in the course of his employment," as used in the Workmen's Compensation Law (Or.L. § 6616), should be given a broad and liberal construction. This is the holding of many courts, including our own. In a valuable note appearing in Ann.Cas.1918B, 769, the view of different courts concerning a workman's right to compensation under laws similar to our own is set down. We quote therefrom the following:

" ' "To entitle a workman to an award of compensation under a Workmen's Compensation Act, his injuries must result from an accident both arising out of and in the course of his employment. The two elements must coexist. They must be con-

current and simultaneous. The one without the other will not sustain an award. Yet the two are so entwined that they are usually considered together in the reported cases, and a discussion of one of them involves the other. \* \* \* 'In the course of' points to the place and circumstances under which the accident takes place and the time when it occurred. In order to restrict beyond the reach of question the words 'in the course of the employment,' the words 'arising out of' were added, so that the proof of the one without the other will not bring a case within the act. The term 'arising out of' in the act points to the origin or cause of the injury. It presupposes a causal connection between the employment and the injury. Larke v. John Hancock Mut. Life Ins. Co., 90 Conn. 303, 97 A. 320, L.R.A.1916E, 584, 12 N.C.C.A. 308. The words 'out of' involve the idea that the accident is in some sense due to the employment. Griffith v. Cole Bros., 183 Iowa 415, 165 N.W. 577, L.R.A.1918F, 923, 15 N.C.C.A. 674."

" 'In treating this question the Supreme Court of Texas said, in the case of Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 110, 246 S.W. 72, 73, 28 A.L.R. 1402, 1405: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily, or reasonably inherent in or incident to, the conduct of such work or business. As tersely put by the Supreme Court of Iowa:

'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa 498, 168 N.W. [916], 918, 17 N.C.C.A. 682."

" 'In Cox v. Kansas City Refining Co., 108 Kan. 320, 323, 195 P. [863], 865, 19 A.L.R. 90, 93, the Supreme Court of Kansas said: "The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

" 'In Coronado Beach Co. v. Pillsbury, 172 Cal. 682, 158 P. 212, L.R.A. 1916F, 1164, 12 N.C.C.A. 789, the court spoke as follows: "The accidents arising ' out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment." ' "

■ The doctrine that an injury, to be compensable, must occur during the course of, and arise out of a risk inherent in or incidental to such employment is so well established in this jurisdiction that it is

now stare decisis. It was applied even in the case of Goodyear Aircraft Corporation v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511. We agree with the conclusion reached in that case that the injury suffered by the employee was compensable. The injury sustained there occurred during the course of his employment, and was clearly by an accident arising out of such employment and incidental thereto. This principle is supported by many authorities including Elliott v. Industrial Accident Commission, 21 Cal.2d 281, 131 P.2d 521, 144 A.L.R. 358. But we do not agree with the dictum in Goodyear Aircraft Corp. v. Industrial Commission, supra, that: "* * Nowhere is there any limitation on what accidents may not be included within the phrase (arising out of and in the course of employment). Neither in terms nor by implication is there any limitation (in the Workmen's Compensation Act) that the term 'arising out of' shall be limited to cases where the employment increases the danger or where the workman is more exposed to injury than are others so engaged." [62 Ariz. 398, 158 P.2d 516.] The very term "arising out of" itself places a limitation upon compensable injuries. If an injury does not arise out of an employment and in the course of the employment, if there is not a causal relation between the condition under which the work is required to be done and the injury sustained, it is not compensable.

All of the authorities seem to agree that the term, "arise out of an employment," means that there must be a causal relation between the conditions under which work is required to be performed and the resulting injury. Simon v. Standard Oil Co., 150 Neb. 799, 36 N.W. 2d 102; Bennett's case, 140 Me. 49, 33 A.2d 799; · Carmichael v. J. C. Mahan Motor Co., 157 Tenn. 613, 11 S.W.2d 672; Cennell v. Oscar Daniel Co., 203 Mich. 73, 168 N.W. 1009, 7 A.L.R. 1301. Therefore in order for an accident to arise out of an employment it must have had its origin in the employment. It reasonably follows that if an accident has its origin in the employment that the cause from which the accident originated resides in the employment and must necessarily be either inherent in the employment or incidental thereto. Webster's New International Dictionary, 2d Ed. Unabridged, defines inherent to mean "firmly or permanently contained or joined; infixed; indwelling." It is a risk peculiar to and inseparable from the nature of the employment. In the case of Farley v. Edward E. Tower Co., 271 Mass. 230, 171 N.E. 639, 86 A.L.R. 941, it was held that a danger is inherent when due to the nature of an article. Thus by analogy a danger or risk is inherent in an employment when it is due to the nature of the employment.

In the case of M. P. Gustafson Co. v. Industrial Commission, 348 Ill. 11,

180 N.E. 567, 569, it was held that: "* * A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in the fulfillment of his contract of service, and it may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith. * * *" We believe the above to be a fair interpretation of the term "incidental risk."

■ An injury or accident occurs in the course of his employment if the employee is injured while he is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time. "The words 'in the course of' refers to the time, place, and circumstances under which it occurred." Goodyear Aircraft Corp. v. Gilbert, [65 Ariz. 379, 181 P.2d 626] supra; Thomas v. Industrial Commission, 54 Ariz. 420, 96 P.2d 407.

■ We believe a fair interpretation of the term "arising out of" to be that the cause producing the accident must flow from a source within the employment. That source must have its situs in some risk inherent in the employment or incidental to the discharge of the duties thereof. In other words there must be some causal relation between the employment and the injury. Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188. If an employee is injured by accident while engaged in the performance of some duty for an employer reasonably contemplated in the employment, regardless of the cause of the accident, it must be considered as an accident during the course of and arising out of such employment due to a risk inherent in the employment or incidental thereto. The risk or danger to which the employee may be subjected may be one existing independently, over which the employer has no control, and for which he is in no wise responsible. It is enough if the duties of the employee require him to subject himself to such risk or danger. The accident caused thereby arises out of the employment as much so as if the employer were responsible for such risk or danger. Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A. L.R. 1044; Meyer v. Royalton Oil Co., 167 Minn. 515, 208 N.W. 645.

■ A determination of whether an accident arises out of and in the course of employment must always depend on the facts of the particular case. Pacific Employers Insurance Co. v. Industrial Accident Commission, 19 Cal.2d 622, 122 P.2d 570, 141 A.L.R. 798. The difficulty lies in applying the principle of law with the facts especially where the accident and injury are not due to a risk inherent in the nature of the employment but are merely incidental thereto.

The decisions of the various courts on what acts are or are not incidental to the

employment represent almost as many views as there are states in the Union, and of course are based upon statutes the majority of which are unlike our own.

We said in the case of Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703, 705, that: "It is of course the general rule in compensation cases, subject to a few exceptions, that a man does not enter an employment until he reaches the place where the work of his employer is to be carried on, and similarly, when he has finished all the work required by his duties and leaves the place of business of his employer to go to his own home, he has left the employment, and that an accident which may occur to him on his way to or from his work is not in the due course of his employment. * * *" The court in that case however held that this rule applied only to those cases when the employee was not required by an employer to perform services away from his place of employment and out of his regular hours requiring him to travel over the public highways.

There are many cases that hold if the employee is injured after reaching the premises of the employer and before entering upon the performance of his duties that the accident arises out of and in the course of his employment. Counsel for petitioner cites a number of cases to this effect including the following: Simonson v. Knight, 174 Minn. 491, 219 N.W. 869; Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507; Kowcun v. Bybee, 182 Or. 271, 186 P.2d 790; and Jeffries v. Pitman-Moore Co., 83 Ind.App. 159, 147 N.E. 919. In each of the above cases, however, the employee was required to assume a special risk upon the premises such as having to cross railroad and street railway tracks upon which engines and electric cars were frequently run. In the three latter cases the injuries resulted from the operation of trains and electric cars. In the case of Simonson v. Knight, supra, the employee was injured by reason of an excavation existing upon the premises into which she fell. In Olson v. Trinity Lodge No. 282, A. F. & A. M., 226 Minn. 141, 32 N.W.2d 255, cited by petitioner the employee fell on an icy walk while on his way to his room located on the premises where he worked to leave a Mackinaw coat preparatory to cleaning out and firing the furnace. The court there said in substance that it was necessary for him in preparing to do his work to change his clothes and that it was incidental to his employment. State ex rel. Green v. District Court, 145 Minn. 96, 176 N.W. 155; and Kasari v. Industrial Commission, 125 Ohio St. 410, 181 N.E. 809, 82 A.L.R. 1040, also cited by petitioner, were cases where an award for compensation was sustained not because of the court's interpretation of the language used in the statute but because the tribunal below had decided the facts on a conflict in the evidence or where different inferences

could be drawn therefrom and it was the rule of those courts, as it is here, that under such circumstances the finding of the lower tribunal would not be disturbed.

Some of the courts hold that the injury need not necessarily occur during the period the employee is engaged in the work he is required to do but that the employee should be allowed a reasonable margin after going upon the premises before and after his working hours within which, if injured, he should be compensated. Among these cases are Park Utah Consolidated Mines Co. v. Industrial Commission, 103 Utah 64, 133 P.2d 314. And still other courts have declined to follow the so-called "going and coming" rule adopted by us in Butler v. Industrial Commission, supra, and supported by a majority of the courts. The "going and coming" rule is to the effect that injuries sustained while going to and coming from work are noncompensable unless under the contract of employment the employee is paid for his services from the time he leaves home until he returns or unless he is on some special errand for the employer. The decisions of the courts which have refused to follow the "going and coming" rule to all intents and purposes make the employer an insurer.

 We said in the case of Ocean Accident & Guarantee Corp., v. Industrial Commission, 32 Ariz. 265, 257 P. 641, 643, that: "The Compensation Act is not an insurance law requiring the employer to compensate every injury an employee suffers while in his employment, but only those accidental injuries that arise out of and in the course of the employment. As has been well said, to extend the law to cover all injuries sustained by an employee while employed would be giving to employees protection against the common and everyday accidents to which all mankind is daily exposed and make them a privileged class. Compensation must therefore be limited to those employees within the intendment of the legislation providing for it, and not extended to include cases clearly without its intent and purview. * * *" See also Sears, Roebuck & Co. v. Industrial Commission, 69 Ariz. 320, 213 P.2d 672. Let us now undertake to apply the rule above stated to the facts of the instant case. Here the deceased was on his way to work at the time of his injury. He was not required by his employer to do work away from his office and even if he had been he was not engaged in the performance of any work or on any errand for his employer on the morning of the accident. He had not reached the place of his employment in the sense that he was then where he was required to discharge the duties required of him. Counsel argue that he was upon the premises when he fell and that the courts make a distinction in cases where the employee is injured upon the premises and in cases where the injury is sustained before reaching such premises. The cases above discussed were cited in support of this propo-

254

sition. In reaching our conclusion here we have considered those cases. The accidental fall of deceased certainly did not arise out of a risk or danger that was inherent in the nature of the employment, that is, there was nothing in the nature of his employment that was in itself hazardous or dangerous. The question then is, Was the accident and injury incidental to his employment so that we can say that there was a causal connection between the condition of the work required of deceased and the resulting injury? If the deceased had fallen on the city street or sidewalk before entering upon the premises of the Elks' Lodge according to the weight of authority constituting the better-reasoned cases, the injury sustained would not have been compensable. This court has so held in Butler v. Industrial Commission, supra. Though we are charged with the duty of giving the Workmen's Compensation Act a liberal construction, are we justified in saying that merely because the deceased had entered 10 or 15 feet upon the premises of the employer and walking on a concrete pavement which created no special risk that the "going and coming" rule of noncompensability should be ignored? We cannot believe that the legislature in enacting the law intended any such distinction. We believe the better rule to be that unless there is some special risk or danger upon the premises to which the employee is subjected, that if he is injured before entering upon his work that such injury does not arise out of his employment and is therefore noncompensable. It is our duty to consider the evidence in the light most favorable to sustain the findings and award of the Industrial Commission. The commission reached the conclusion that the injury to deceased did not arise out of his employment and we believe this decision to be reasonably supported by the evidence.

Award affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.