GRIFFIS, P.J.,
for the Court:
¶ 1. Percy Tate appeals the Mississippi Workers’ Compensation Commission’s decision to deny benefits on the ground that Tate failed to offer sufficient medical evidence to show the injuries were work-related. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶2. In 1974, Tate started working for International Paper Company. He held several jobs, including trucker, bundler, press helper, helper, and operator in International Paper’s box-manufacturing plant. Though the jobs differed in duties, every position Tate held involved some degree of manual labor and repetitive movements. During his time at International Paper, Tate broke his foot in an unrelated incident but did not receive .workers’ compensation for the injuries or complain about any subsequent injuries,
¶ 3. Beginning in May 2000, Tate first visited Magnolia Clinic for shoulder pain. Over a period of ten years, Tate visited the clinic off and on to seek treatment for pain and numbness in his 'left shoulder; ' In these visits, Tate received pain and anti-inflammatory medication, as well as diagnoses of arthritis and degenerative-disc disease. In April 2010, Tate went to the clinic with right-shoulder pain and was diagnosed with rotator-cuff tendinitis. ■
¶ 4. On May 17, 2010, Tate sought treatment at Southwest Center for Orthopedics and Sports Medicine for shoulder pain, and he returnéd to Magnolia Clinic later in the year. On May 11, 2011, Tate went to Dr. Michael Patterson for left-shoulder pain. Dr. Patterson discovered a herniated disc in Tate’s spine and performed a spinal fusion on May 17, 201Í. Dr. Patterson also referred Tate to Dr. Michael Ston-nington for additional treatment.
¶ 5. After the spinal fusion, Tate applied for short-term disability and requested that Dr. Patterson fill but a treating-physician-certification form. On the form, completed on May 18, 2011,, Dr. Patterson reported Tate experienced pain for at least a year and a half and did not suffer a recent injury.
¶ 6. Dr. Stonnington began treating Tate on June 27, 2011, and operated on Tate’s left shoulder on July 15, 2011. Subsequently, Tate, complained of right-shoulder pain for several months. On November 8, 2011, Tate filled out a patient-history questionnaire regarding his shoulder pain and replied his pain was work-related for the past four ■ years. Dr. Stonnington. per *138 formed surgery on Tate’s right shoulder on December 2, 2011.
¶7. Tate continued to have pain and developed numbness in his right hand. On April 4, 2012, Dr. Patterson treated him for the pain and numbness. Dr. Patterson also noted the pain and numbness may have resulted from the physical therapy Tate did as part of his recovery from shoulder surgery, but ultimately determined the source was inconclusive.
¶8. Although Tate received short-term disability after his May 2011 surgery, he did not file that disability claim through International Paper. Tate did not seek disability from International Paper until October 2011, after his insurance denied his request for long-term disability. In October 2011, Tate spoke with Kim For-man,[1] International Paper’s workers’ compensation administrator. Forman assessed Tate’s application for workers’ compensation, and she concluded that Tate untimely filed his complaint and his injuries did not result from work. As a result, International Paper denied Tate any workers’ compensation benefits.
¶ 9. Thereafter, on January 24, 2012, Tate filed a petition to controvert with the Commission. The administrative judge (AJ) held a hearing on August 13, 2013, and issued an order on December 19, 2013. In the order, the AJ found that the two-year statute of limitations did not preclude Tate’s claim and that Tate suffered com-pensable, work-related injuries. The AJ awarded Tate workers’ compensation benefits from May 11, 2011, until his maximum medical improvement.
¶ 10. International Paper appealed the AJ’s decision to the Commission. The Commission reversed the AJ’s order. The Commission found that Tate failed to meet his burden of proof in showing a causal relationship between his work and his injuries, but did not address the statute-of-limitations issue. Tate now appeals the Commission’s decision.
STANDARD OF REVIEW
¶ 11. “The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of. the law.” Concert Sys. USA Inc. v. Weaver, 33 So.3d 1186, 1188 (¶ 10) (Miss.Ct.App.2010) (citing Weatherspoon v. Croft Metals Inc., 853 So.2d 776, 778 (¶ 6) (Miss.2003)). When the issue involves a question of law, however, the review is de novo. Davis v. Clarion-Ledger, 938 So.2d 905, 907 (¶ 5) (Miss.Ct.App.2006) (citing Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506 (¶ 8) (Miss.Ct.App.1998)).
ANALYSIS
¶ 12. Tate primarily argues the Commission erred in finding Tate’s injuries were not compensable. Further, Tate contends the Commission erred in requiring him to prove the causation of his injuries before a finding of compensability. International Paper counters that substantial evidence supports the Commissions findings because Tate failed to meet his burden in providing sufficient medical evidence to prove any work-related injuries existed.
¶ 13. “Under workers’ compensation law, the claimant has the burden of proof in showing the causal connection between the claimant’s employment and the resulting disabling condition.” Clark v. Spherion Corp., 11 So.3d 774, 777 (¶ 15) (Miss.Ct.App.2009) (citing Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994)). “Unless common knowledge suffices, medi *139 cal evidence must prove not only the existence of a disability but also its causal connection to the employment.” Franks v. Foam Craft, 929 So.2d 350, 353 (¶ 13) (Miss.Ct.App.2006) (citation omitted).
¶ 14. Tate submitted medical records into evidence showing the various ailments and treatments he received for his neck, back, and shoulder pains.,. Through his medical history, Tate attributed his pain to his work duties on one occasion. However, Tate could not pinpoint when his injuries occurred other than stating in his petition to controvert that he suffered injuries on May 11, 2011.[2] Tate suffered from symptoms as early as 2000, but did not seek to connect any of his medical issues to his work duties until he notified his employer in October 2011; then he asserted the connection on a patient- questionnaire in November 2011.
¶ 15. Further, Tate offered no testimony by any of his treating physicians regarding the source of his medical problems. “In all but the simple and routine cases[,] it is necessary to establish medical causation by expert testimony. A claim of disability must be supported by medical findings.” Clark, 11 So.3d at 778 (¶ 16) (internal citations and quotations omitted). Tate argues his injuries fell into the category of simple and routine cases that would not require further medical evidence. Tate asserts that no other explanation for his injuries exists because he did not participate in any activities or receive any injury outside of work that would cause such injuries.
¶ 16. Yet, over the years Tate received treatment, no physician conclusively determined how and where Tate’s injuries occurred. Only Dr. Patterson opined on how Tate’s injuries occurred and worsened over a period of time. However, Dr. Patterson could not establish the origins of Tate’s injuries or conclude that Tate’s work duties .contributed. No evidence other than testimony by Tate and his wife showed causation.
¶ 17. Tate could not meet his burden of proof in showing he suffered compensable, work-related injuries requiring his employer to pay workers’ compensation benefits. Because the evidence Tate submitted failed to show causation, we find the substantial evidence supported the Commission’s finding of no compensability. Therefore, we affirm the decision of the Commission.
¶ 18. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAÍR, JAMES AND WILSON, JJ., CONCUR.

. The transcript and Tate’s briefs refer to Kim Forman as Kim Farmer. We have used the same spelling as International Paper, her employer.

. In Tate’s original petition to controvert, he stated the injury occurred on May 16, 2011. Tate later amended his petition to controvert, and listed the date of injury as May 11, 2011.